Charles H. Girt v. Commissioner.
Girt v. Commissioner
Docket No. 78965.
United States Tax Court
T.C. Memo 1961-286; 1961 Tax Ct. Memo LEXIS 63; 20 T.C.M. (CCH) 1499; T.C.M. (RIA) 61286; October 16, 1961
*63 James G. Marks, Esq., for the petitioner. Charles A. Boyce, Esq., for the respondent. BRUCE Memorandum Findings of Fact and Opinion BRUCE, Judge: The respondent determined deficiencies in income tax for the calendar years 1954 and 1955 in the respective amounts of $1,968.02 and $628.26. The principal issue is whether an oral agreement between the petitioner and Dr. Herbert M. LaRue was in the nature of a joint venture with a division of fees or amounted to the sale by the petitioner to LaRue of an existing practice. If held to be a sale, there is the further question whether the proceeds may be treated as long-term capital gains. This proceeding was consolidated, for hearing only, with the case of Herbert M. LaRue and Jane S. LaRue, Docket No. 79209. The respondent determined deficiencies in that case on the theory that this agreement was a sale of a practice and all the net income therefrom was taxable to the LaRues. The respondent takes a contrary position in the present case. The petitioner filed income tax returns for 1954 and 1955 with the director of internal revenue at Pittsburgh. Findings of Fact The stipulated facts are incorporated herein by this *64 reference. The petitioner is an orthodontist engaged in practice in Pittsburgh, Pennsylvania. Orthodontia is a specialized phase of dentistry involving the correction of malocclusion or regulating the dental arches to a more favorable aesthetical appearance and functional relationship. The petitioner maintained his principal office in the Medical Arts Building in Pittsburgh since 1931. From about 1937 he operated an office in Uniontown, Pennsylvania, in addition. That office was started at the request of friends to alleviate the difficulties of travel to Pittsburgh by patients. At first he visited Uniontown once in two weeks but later on an average of once each week. Patients were referred to him by dentists or by satisfied parents of former patients. He had no clerical help at Uniontown and handled all correspondence from the Pittsburgh office. In the years 1949 to 1954 the petitioner employed Dr. Herbert M. LaRue as an assistant in his Pittsburgh office. LaRue occasionally treated the Uniontown patients at Uniontown when the petitioner was absent. In 1953 Girt had become weary of the difficulties of visiting Uniontown. In April 1953 LaRue and Girt entered into an oral agreement *65 concerning the Uniontown practice. The agreement provided that during the period May 1, 1953, to April 30, 1954, inclusive, all collections from the Uniontown practice would be received by Girt, 40 percent of such receipts remitted to LaRue, and Girt was to pay all expenses of operating the office. For the period May 1, 1954, to April 30, 1955, inclusive, all the collections from the Uniontown practice were to be received by LaRue, 40 percent of such receipts remitted to Girt, and LaRue was to pay all expenses of the office. From approximately June 1953 on, LaRue attended to the Uniontown practice alone, aided when necessary by consultations with Girt from the latter's Pittsburgh office. After the oral agreement of April 1953, Girt no longer practiced in Uniontown, and except for assisting LaRue in getting the transfer started, was never thereafter in the office. After April 30, 1955, Girt had no interest in the Uniontown office. The agreement was carried out by both parties and the disposition of receipts from the Uniontown office was as follows: Gross
Period
Receipts
Girt
LaRue
May 1 - Dec. 31, 1953
$9,620
$5,772
$3,848
Jan. 1 - Apr. 30, 1954
4,705
2,823
1,882
May 1 - Dec. 31, 1954
9,620
3,848
5,772
Jan. 1 - Apr. 30, 1955
4,245
1,698
2,547
*66 In their practice of orthodontia the procedure of Girt and LaRue was as follows: Upon initial contact between the patient and dentist, a preliminary examination would be performed, which included making models of the patient's mouth, lateral jaw X-rays and full mouth X-rays. The second meeting between the dentist and patient was devoted to discussion of the type of treatment involved, the length of time, and cost. If the patient, or parent thereof, was satisfied, a letter was sent to the patient or his parent, outlining the conditions under which the case would be handled, including the terms of the consideration expected for the treatment to be performed. The terms of such letters varied as to the diagnosis of the case and amount and terms of payment. The following is representative of the letters pertaining to the fee arrangement: The initial fee, which covers models, x-rays and starting appliances, will be $75 and is due now. A fee of $20 per month for adjustments from time to time and for any new appliances that may have to be constructed during the course of treatment. I might add, that this monthly fee has nothing whatsoever to do with the number of visits to my office, as *67 appointments may vary from one to six weeks apart, depending upon the successful progress of the case. This monthly fee shall continue as long as I have the responsibility for the case. X-rays are considered in my monthly charges and are taken as often as I find it necessary. On May 1, 1953, there were 42 cases in the Uniontown office resulting from such letters. The amount paid thereon prior to May 1, 1953, was $8,190. The total amount actually realized on such agreements after May 1, 1953 was $13,845. The physical assets in the Uniontown office were fully depreciated office furniture and equipment with an approximate cost basis of $600 and a small inventory of compounds of nominal value fully expensed for income tax purposes. The treatment of such cases may extend from 1 to 3 years, but the average time for successful treatment is about 2 years. Once treatment is commenced, the percentage of patients who discontinue the treatment is small. With respect to the 42 cases outstanding when LaRue took over the Uniontown office, all patients completed the treatment with the possible exception of one or two. Until the time LaRue took over the Uniontown office, Girt was the only practicing *68 orthodontist in Uniontown. After the oral agreement of April 1953, Girt continued to employ LaRue as his assistant in the Pittsburgh office at a salary of $600 per month through April 1954, and at a salary of $416 per month for several months thereafter, until LaRue set up his own office in Pittsburgh. There was no agreement between Girt and LaRue that Girt would not compete in the practice of orthodontia in Uniontown nor was there an agreement between Girt and LaRue with respect to the use of Girt's name, which continued to appear on the Uniontown office door until May 1955. Girt's name continued on the building directory in Uniontown for the first year of the agreement, during the period May 1, 1953, to April 30, 1954, but was removed some time during the second year of the agreement. Girt's name appeared in the telephone book in Uniontown in the calendar year 1953, but did not appear in the telephone book for 1954 and 1955. The first year of the agreement between Girt and LaRue, all billings to patients were made from Girt's Pittsburgh office. Girt intended to transfer the Uniontown practice, including good will, to LaRue, and had no intention of competing with LaRue in that *69 locality. The petitioner in his tax returns for 1954 and 1955, filed on the cash basis, treated the amounts he received from the Uniontown practice as long-term capital gains. The respondent determined that such amounts were taxable as ordinary income. Opinion In the case of Herbert M. LaRue and Jane S. LaRue, Docket No. 79209, 37 T.C. - (October 16, 1961), we held that the agreement here in question amounted to the sale of an existing orthodontic practice and that the purchaser, LaRue, was taxable on the net income from the practice. It follows that the amounts paid by LaRue and received by Girt were derived from the sale of a capital asset. The respondent contends, however, that this petitioner has not shown that the subject matter of the sale was held for more than six months in order to entitle the petitioner to treat the gain as long-term capital gain. The respondent refers to the letters of arrangement for treatment and suggests that these were articles sold. Our interpretation of the agreement is that there was the sale of an existing practice which Girt had built up over a period of some 15 years. We consider it immaterial whether any of the individual agreements *70 were entered into less than six months before the sale. The petitioner is entitled to treat the proceeds as long-term capital gains. Decision will be entered for the petitioner.